UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

POWER MARKETING DIRECT, INC.,

Plaintiff,

vs.

Case No. C2-05-766
District Judge Sargus
Magistrate Judge King

RICKY PAGNOZZI,

Defendant.

## OPINION AND ORDER

Plaintiff Power Marketing Direct, Inc. (Plaintiff or PMD) originally filed this action in the Court of Common Pleas of Franklin County, Ohio, (Case No. 05CVH-07-7264) against Defendant Ricky Pagnozzi (Defendant or Pagnozzi) seeking injunctive relief and monetary damages for alleged violation by Defendant of a written sales agreement with Plaintiff and his alleged failure to pay on an account incurred pursuant to such agreement, as well as for recovery of attorney fees as also provided in such license agreement. Complaint, Doc. 1-2. The Complaint included a copy of Defendant's alleged license agreement as Exhibit A and a copy of his alleged account as Exhibit B. Defendant then removed the case to this court pursuant to the provisions of 29 U.S.C. §§ 1332 and 1441, asserting "there is complete diversity of citizenship among the parties and, upon information and belief, an amount in controversy over $75,000." Notice of Removal by Defendant. Doc. 1-1, p.1.

On September 8, 2005, Defendant Pagnozzi filed his Answer and Counter-claim (Doc. 6) as well as a motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss five of the six counts in Plaintiff's Complaint on grounds that each fails to

state a claim upon which relief can be granted (Doc. 7).  Plaintiff filed a response

to Defendant's counterclaims on October 6, 2005 (Doc. 11), and the Court has since

denied Plaintiff's motion to remand the case to state court based on the choice-of-

forum clause in the Defendant's license agreement.[1]  The case is now before the

Court on Defendant's Motion To Dismiss Counts One-Three, Five and Six of Plain-

tiff's Complaint together with the supporting and opposing memoranda and related

materials submitted by the parties (see Docs. 7, 19, and 20).

Because Defendant filed an Answer and Counterclaim (Doc. 6) together with

his motion to dismiss, that motion would normally be treated as a motion for judg-

ment on the pleadings under Fed.R.Civ.Pro. 12(c).  See Haverstock Enterprises, Inc.

v. Financial Federal Credit, Inc., 803 F. Supp. 1251, 1255 (S.D. Mich. 1992).  In this

case, however, Plaintiff has elected not to answer those paragraphs of the Com-

plaint containing the specific allegations of the counts he seeks to have dismissed

(Counts I, II, III, V and VI), expressly relying on his motion to dismiss instead.  Doc.

6, pp. 3, 4.  In any event, the standards for considering Defendant's motion remain

essentially the same.  Haverstock at 1255, citing Thomason v. Nachtrieb, 888 F.2d

1202, 1204 (7th Cir. 1989).

A "motion under Rule 12(b)(6) tests whether a claim has been adequately

stated in the complaint."  Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996-97 (6th

Cir. 1994) (quoting Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th

Cir.1987) (en banc)).  The long-accepted rule is that such a motion "should not be

---

1.  Magistrate's Report and Recommendation, Doc. 21; Opinion and Order, Doc. 27.

granted unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 746 (1976).  In considering the motion, the court must construe the complaint liberally in the non-movant's favor and accept all factual allegations and permissible inferences therein. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).  "When an allegation is capable of more than one inference, it must be construed in the Plaintiff's favor. Allard v. Weitzman (In Re DeLorean Motor Co.), 991 F.2d at 1236, 1240 (6th Cir. 1993; Mayer v. Mylod, 988 F.2d 635, 638.(6th Cir. 1993).  While a court "need not accept as true legal conclusions or unwarranted factual inferences," Morgan v. Church's  Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987), dismissal may not be granted based merely on the court's disbelief of a complaint's factual allegations. Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990).  Neither is a complaint required to "set down in detail all the particularities of a plaintiff's claim," Westlake at 858, so long as the defendant is afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley at 47.

Stated another way, the motion to dismiss tests whether the plaintiff has stated a claim for which the law provides relief.  See Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994).  Consequently, a complaint will not be dismissed unless there is no law to support the claims made, the facts alleged are insufficient to state the claim, or there is an insurmountable bar to the claim on the face of the complaint.  See Rauch v. Day and Night Mfg. Corp., 356 F.2d 697, 702 (6th Cir. 1978).

In this diversity case, the Court applies the substantive law of the State of Ohio as interpreted by its highest court.  See Northland Ins. Co. v. Guardsman Products, Inc., 141 F.3d 612, 617 (6th Cir. 1998); Imperial Hotels Corp. v. Dore, 257 F.3d 615, 620 (6th Cir. 2001).

> .... However,"[i]f the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it.  If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

Northland Ins. Co. at 617 (quoting  Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir. 1981)).  This includes Ohio' choice-of-law rules.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941); Tele-Save Merchandising Co. v. Consumers Distrib. Co., 814 F.2d 1120, 1122 (6th Cir. 1987);  International Ins. Co. v. Stonewall Ins., Co., 863 F. Supp. 599, 601 (S.D. Ohio 1994).  Because of the choice-of-law selection clause in the license agreement upon which this case is largely based, there is further reason to consider Ohio law controlling here, at least in the first instance.  See Kennecorp Mortgage. Brokers, Inc. v. Country Club Convalescent Hosp., Inc. (1983), 66 Ohio St.3d 173 (1983) (citing M/S Bremen v. Zapata Off Shore Co., 407 U.S. 1 (1972) (choice-of-law/forum-selection clauses *prima facia* valid in commercial contracts, absent evidence of fraud or overreaching).

Count One: Breach of Contract –

Defendant first argues that the license agreement in this case is not a valid and enforceable contract because PMD never executed (i.e., signed) the agreement

as required.  Doc. 7-1, p.5.  The license agreement in question (which, as Exhibit A

to the Complaint, becomes part of that pleading, pursuant Fed.R.Civ.P. 10(c)) does

include a line for signature on behalf of Plaintiff PMD upon which no signature is

apparent.  Doc. 1-2, p.10.  However, that document does bear what appears to be

the Defendant's signature in two places (Ibid.), and Plaintiff alleges that Defendant

in fact received training and confidential information pursuant to its terms.  Doc. 1-

2, ¶9.  Further, Plaintiff in effect alleges that it and Defendant conducted business

pursuant to the license agreement from February 2004 to March 2005.  Id., ¶11.

In Allen v. Ford Motor Co., 8 F.Supp.2d 702 (N.D. Ohio 1998), Judge Carr

was ruling in a diversity case involving Ohio contract law.  The facts in Allen, al-

though similar, are distinguishable from those in this case.[2]  Never-the-less, a

portion of Judge Carr's analysis of Ohio contract law, with which this Court fully

agrees, is applicable here.

> A contract may be effective even though the written instrument
> evidencing its terms has not been executed. Ohio Jur.3d § 82 (1980).
> Indeed, "[s]ignature spaces in the form contract do not in and of them-
> selves require that signatures of the parties are a condition precedent
> to the agreement's enforceability." *Richard A. Berjian, D.O., Inc. v.
> Ohio Bell Tel. Co.*, 54 Ohio St.2d 147, 151-152, 375 N.E.2d 410 (1978).
> .... Accord Am Jur.2d § 185 (1991) ("in the absence of a statute re-
> quiring a signature or an agreement that the contract shall not be
> binding until it is signed, parties may become bound by the terms
> of a contract, even though they do not sign it, where their assent is
> otherwise indicated, such as by the acceptance of benefits under the
> contract, or the acceptance by one of the performance by the other").

---

2. In Allen the court, ruling on motion for summary judgment, found that terms of
the written "offer" in that case together with the parties' actions thereafter was not
sufficient show a genuine issue of fact for trial as to existence of a contract.

8 F.Supp.2d at 705; see also <u>Champaign Landmark, Inc. v. McCullough</u>, Hardin Co. Ohio App. No. 6-89-17, Nov. 27, 1990 (unreported), 1990 WL 188002 (an unsigned writing may still be a contract, citing <u>Klonowski Savings Bank v. Monczewski, 109 Ohio St. 230 (1924)</u>). Considering the allegations of the Complaint here and their fair inferences in a light most favorable to Plaintiff, those allegations are clearly sufficient to support the claim that there was, at least for a time, an agreement in the nature of a contract between the parties in this case.

Defendant next argues that even if the license agreement is a valid contract, its covenant-not-to-compete provision is not enforceable under proper application of Ohio choice-of-law rules and Texas law respecting such covenants. Doc. 7-1, pp. 6-17. Defendant relies in particular on the Ohio Supreme Court's ruling in <u>Schulke Radio Productions Ltd. v. Midwestern Broadcasting Co.</u>, 6 Ohio St. 3d 436 (1983), adopting guidelines of the *Restatement (Second) of Conflict of Laws, § 187(2) (1971)*, and on the unreported ruling of another branch of this court in <u>Power Marketing Direct, Inc. v. Ball</u>, Case No. C2-03-1001 (S.D. Ohio, June 28, 2004) (Marbley, J.),[3] in which that court concluded Ohio's choice-of-law rules as established by <u>Schulke</u> required application of California law, despite a choice-of-law provision similar to

---

3. Plaintiffs in the cited case (which was against a Bryce Ball and others, and is referred to as "<u>Ball I</u>" by Defendant), and Plaintiff in another unreported case from this court also cited by Defendant later (<u>Power Marketing Direct, Inc. v. Alan Ball et al.</u>, Case No. C2-03-1004 (S.D. Ohio, April 6, 2004) (Graham, J.) and referred to as "<u>Ball II</u>" by Defendant) are the same Power Marketing Direct, Inc., that is Plaintiff in the present case against Defendant Pagnozzi; and all three cases appear to involve basically the same, or very similar, license agreements as they may be applicable to different alleged licensees of PMD..

the one in this case calling for application of Ohio law.  Applying Ohio law to the facts alleged in this case, however, the Court concludes that a different result is called for here.

As adopted by the Ohio Supreme Court in <u>Schulke</u> and applied by the district court in <u>Ball I</u> relied by Defendant above, Restatement §187(2) provides that the law of a state chosen by contracting parties to govern interpretation of their con-tractual rights will be applied by the court, unless:

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

In <u>Ball I</u>, because the state of California had an absolute statutory prohibition on covenants not to compete[4] and California was found to be the state of "applicable law in the absence of an effective choice of law by the parties," the court concluded that application of Ohio's law on restrictive covenants would be contrary to a fun-damental policy of California.  The Court finds that the situation is significantly different in this case because it cannot be said that Texas has a fundamental policy against enforcement of all, or even most, covenants not to compete.

Since <u>Schulke</u> was decided, the Sixth Circuit has had occasion to further an-alyze application of Restatement §187(2)(b) under Ohio law:

---

4. As quoted by the court in <u>Ball I</u>, <u>supra</u>, Cal. Bus. & Prof. Code § 16600 provides that "every contract by which anyone is restrained from engaging in any lawful profession, trade, or business of any kind is to that extent void."  Further citing and quoting from several California court authorities, the court in <u>Ball I</u> then concluded that "California has a fundamental public policy against the enforcement of non-competition clauses." <u>Ball I</u>, Doc. 7-3, p. 6.

Ohio's receptivity to contractual choice-of-law was further discussed in the recent decision of *Jarvis v. Ashland Oil, Inc.*, 17 Ohio St.3d 189, 478 N.E.2d 786 (1985).  In *Jarvis*, the Ohio Supreme Court held that "where the parties to a contract have made an effective choice of the forum law to be applied, the Restatement of the Law 2d, Conflict of Laws (1971) 561, Section 187(2), will not be applied to contravene the choice of the parties as to the applicable law." *Id.* 17 Ohio St.3d at 192, 478 N.E.2d 786.  The court then added a narrow limitation to this rule: "[W]here the law of the chosen state sought to be applied is concededly repugnant to and in violation of the public policy of [Ohio], the law of Ohio will only be applied when it can be shown that [Ohio] has a materially greater interest than the chosen state in the determination of the particular issue." *Id.*

These recent comments by the Ohio Supreme Court indicate that Ohio choice-of-law principles strongly favor upholding the chosen law of the contracting parties.  We see no reason to disturb the parties' choice absent the application of another state's law that would be concededly repugnant to Ohio public policy.

Tele-Save Merchandising Co. v. Consumers Distributing Co., Ltd., 814 F.2d 1120,

1122 (6th Cir. 1987).

Defendant argues that, absent the license agreement's choice-of-law provision

in this case, Texas would be the state of the applicable law under the Restatement's

§188 and that enforcement of the covenant not to compete here would be contrary to

fundamental Texas law embodied in Tex. Bus. & Com. Code § 15.05.  Doc. 7-1, pp.

8-12.  As relied on by Defendant's argument, that section provides:

> .... [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Id. at 10.

8

Ohio's position on covenants not to compete is not codified, but it has been described as follows by the Ohio Court of Appeals having appellate jurisdiction over the Common Pleas Court chosen by the parties' agreement[5] and from which the case was removed:

> Because a noncompete clause, which prohibits a former employee from working in competition with his former employer, amounts to a restraint of trade, *Frank, Seringer & Chaney, Inc. v. Jesko* (Dec. 6, 1989), Lorain App. No. 89CA004577, unreported, 1989 WL 147951, such clauses will be enforced only to the extent that the restraints imposed thereby are reasonably necessary to protect the employer's legitimate business interests. See *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 25-26, 71 O.O.2d 12, 14-15, 325 N.E.2d 544, 546-548. A noncompete clause will be found to be reasonable only where the employer can show by clear and convincing evidence that the restrictions imposed by the non-compete clause (1) are no greater than necessary for the protection of the employer's legitimate business interests, (2) do not impose undue hardship on the employee, and (3) are not injurious to the public. *Id.* at paragraph two of the syllabus. Factors which may be considered in determining whether a non-compete clause is reasonable include the clauses' geographic and temporal limits, if any; whether the employee represents the sole customer contact; whether the employee possesses confidential information or trade secrets; whether the clause seeks to restrain ordinary, rather than unfair, competition; whether the clause stifles the pre-existing skills of the employee or only those skills that were developed while working for the employer; the balance of the clause's detriment to employer and employee; whether the clause restricts the employee's sole means of

---

5. A Texas court has rejected an attempt by Defendant avoid the license agreement's choice-of-forum provision that is joined with its choice-of-law provision in paragraph 26 (Doc. 1-2, Ex. A, p. 9). In support of its memo in opposition to Defendant's dismissal motion, Plaintiff has attached a certified copy of an Order from the District Court of Harris County, Texas, signed June 24, 2005, dismissing the claims of Plaintiff Pagnozzi and another against PMD "without prejudice to Plaintiffs' right to file the same in Franklin County, Ohio." The details of that ruling are not before this Court, but Defendant does not dispute Plaintiff's representation that the same license agreement provision was involved, and that appears likely true in view of the express reference to Franklin County, Ohio.

support; and whether the restricted employment is merely incidental to the main employment. *Id.* at 25, 71 O.O.2d at 14, 325 N.E.2d at 546-547.

Brentlinger Enterprises v. Curran, 141 Ohio App.3d 640, 645-46, 752 N.E.2d 994, 998-99 (Ohio App. 10th Dist. 2001); See also, Rogers v. Runfola & Associates, Inc., 57 Ohio St.3d 5, 8 (1991); Avery Dennison Corp. v. Kitsonas, 118 F.Supp.2d 848, 852-53 (S.D. Ohio 2000).

Obviously, the laws of the two states are not identical. Just as obviously, however, they are far more similar than in conflict. Both states permit, and will enforce, "reasonable" covenants not to compete. The detailed interpretation of such covenants and extent of their enforcement no doubt varies between the two states, but to base a rejection of the parties' contractually-agreed choice of law upon such variations as may be applicable here would allow the Restatement's *exception* in § 187(2)(b) to swallow the basic rule of § 187(2) itself. Comparing these two states' legal positions[6] in light of what our circuit has described as Ohio's choice-of-law principles that "strongly favor upholding the chosen law of the contracting parties," Tele-Save, 814 F.2d at 1122, this Court cannot conclude that Ohio would consider application of its law "contrary to a fundamental policy" of the state of Texas, at least not as the Ohio conflicts-of-law rules apply that phrase from Restatement § 187(2)(b).

---

6. It appears that most circumstances which could be argued against enforcement of such covenants in Texas could also be argued against, or at least to limit, such enforcement in Ohio.

In support of his argument on this point, Defendant cites and discusses Texas cases ruling under its statutory provision respecting that state's position on various aspects this point (Doc. 7-1, pp. 12-15), but that in, effect, approaches the question from the wrong direction.  On this initial choice-of-law question, the Court is applying *Ohio* law and legal analysis, not that of Texas, and this Court considers the approach of Ohio law is better represented by the Sixth Circuit's opinion in Tele-Save.  In that case, the court was reviewing application of the parties' contractual choice of New Jersey law in an Ohio case involving an Ohio plaintiff and a defendant Canadian corporation with offices in New Jersey.

> ... [E]ven if we were to concede that the Ohio statute represents fundamental public policy, we are unpersuaded that the application of New Jersey law would be contrary to this policy.  Both parties agree that New Jersey does not have a statute which is identical to the Ohio Act.  One may not determine conclusively from this omission, however, that the application of New Jersey law would be contrary to Ohio policy.  Tele-Save acknowledges that there are also common law remedies available under New Jersey law.  In its original complaint, Tele-Save alleged claims for breach of contract and fraud.  <u>It is not sufficient for Tele-Save to argue nor would we hold that Ohio law should be applied merely because a different result would be reached under New Jersey law</u>.  *Restatement (Second) of Conflict of Laws*, § 187 comment g (1971).  In order for the chosen state's law to violate the fundamental policy of Ohio, it must be shown that there are significant differences in the application of the law of the two states.  *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1031 n. 19 (4th Cir.1983) (Ohio law regarding restrictive covenants not applied to a state that prohibits such covenants).  We find nothing under the facts before us to indicate that application of New Jersey law would be repugnant to or clearly contrary to the public policy of Ohio.  <u>Because we find the first prong of the Restatement, section 187(2)(b) analysis to be unsatisfied, we need not address the question of whether Ohio has a materially greater interest than New Jersey in the outcome of this dispute.</u>

814 F.2d at 1123 (emphasis added).  Applying this analysis to the, not identical,

11

but substantially similar covenant-not-to-compete laws of Ohio and Texas, this Court cannot conclude that application of Ohio's law "would be repugnant to or clearly contrary to the public policy of" Texas, even if it could be argued that the results there *might* be different . The Court therefore further concludes that an Ohio court would not apply the Restatement's § 187(2)(b) exception to avoid the parties' choice of Ohio law to govern interpretation of the agreement in this case.

Considering this count under Ohio law, then:

> In order to recover for breach of contract, Plaintiffs must establish: (1) the existence of a binding contract or agreement; (2) that Plaintiffs performed their contractual obligations; (3) that Defendant failed to fulfill his contractual obligations without legal excuse; and (4) and that Plaintiffs suffered damages as a result of the breach. *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 661 N.E.2d 218, 226 (1995) (citing *Nat'l City Bank v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953).

Bird v. Delacruz, 411 F.Supp.2d 891, 896 (S.D. Ohio 2005). The court finds that Plaintiff has sufficiently alleged those elements in this case. As explained above, the existence of a binding agreement is alleged by the Complaint and its Exhibit A bearing Defendant's signatures. Plaintiff's performance is sufficiently alleged in the Complaint's allegations of furnishing training and access to confidential business records in ¶ 9, as well as other, more general allegations indicating that Plaintiff and Defendant did business under the license agreement from early 2004 through March 2005. Defendant's failure to fulfill his obligations is sufficiently alleged by Complaint's ¶¶ 12, 14, and 17 together with ¶ 19 of Exhibit A. Finally, insofar as is required at this point, Plaintiff's damages are sufficiently alleged in the Complaint's ¶¶ 15 and 18.

Count II: Uniform Trade Secrets Act –

The essential allegation of Count Two of Plaintiff's Complaint is that Defendant is engaging in unfair competition by using Plaintiff's trade secrets, confidential information, and/or propriety information in violation of Ohio's Trade Secrets Act provisions in Ohio Revised Code (ORC) §§ 1333.61, et seq.,  Doc. 1-2, ¶¶ 20-23.

> In order to establish its cause of action for wrongful appropriation of trade secrets plaintiff must establish by the preponderance of the evidence (a) the existence of a trade secret (b) acquisition of the trade secret as a result of a confidential relationship and (c) the unauthorized use of the secret. *E. W. Bliss Company v. Struthers-Dunn, Inc.*, 408 F.2d 1108 (C.A. 8 1969).

GTI Corp. v. Calhoon, 309 F.Supp. 762, 767 (S.D. Ohio 1969).  Defendant argues that Plaintiff has failed to allege facts indicating the existence of any trade secrets or reasonable efforts to maintain the secrecy of any such information.  Doc. 7-1, p.18 ff.  The court disagrees.

In the Ball II case relied on by Defendant elsewhere (see footnote 3, above),[7] another branch of this court analyzed Plaintiff PMD's claim of Trade Secretes Act violation in that case as follows:

> Plaintiff alleges in paragraph 6 of the complaint that prior to commencing plaintiff's training program, defendant agreed to sign a license agreement in exchange for access to plaintiff's confidential business contracts, customers, suppliers, and methods and strategies of conducting business.  Plaintiff alleges in paragraph 8 that as a result of defendant's agreement to the covenant against competition, defendant received training from plaintiff and access to all of plaintiff's confidential business information.  Plaintiff alleges in paragraph 15 of the complaint that during the course of his contractual or business

---

7. The Court notes that the so-called Ball II ruling referred to was actually rendered more than two and one-half months before the decision that is referred to here as Ball I.

relationship with plaintiff, defendant "learned trade secrets, confidential information and other proprietary information belonging to plaintiff, including but not limited to information concerning PMD's marketing strategies, pricing, vendor relationships and terms, and customers."

In paragraph 16, plaintiff alleges that defendant, for his own benefit, has used, exploited or divulged confidential and proprietary information belonging to plaintiff. In paragraph 17, plaintiff alleges that defendant has engaged in unfair competition by using plaintiff's confidential and proprietary information which was obtained and only available to defendant by reason of his agency or business relationship with plaintiff. In paragraph 18, plaintiff alleges that defendant acted maliciously and intentionally in misappropriating plaintiff's trade secrets and engaging in unfair competition.

<u>Ball II</u>, Opinion and Order, Doc. 7-4, pp. 12-13. Paragraphs 7, 9, 20, 21, and 22 of

the Complaint in this case (Doc. 1-2, pp. 2-3, 5) are essentially the same as, if not

indeed identical to, the paragraphs 6, 8, 15, 16, and 17 analyzed by the <u>Ball II</u> court

above. This Court agrees with <u>Ball II's</u> analysis and its conclusion:

> These allegations are sufficient to plead the existence of a trade secret. The allegations refer to marketing strategies, pricing, vendor relationships and terms, and customer lists. Customer lists in particular may constitute a trade secret, and there is a presumption of secrecy regarding such lists when the owner takes measures to keep it from being available to others. See <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer</u>, 816 F.Supp. 1242 (N.D.Ohio 1992). As to the requirement that the owner take steps to maintain the secrecy of these items, the facts pleaded in the complaint indicate that defendant had to sign a covenant not to compete in order to have access to this information, and that the information was available to defendant only because of his agency or business relationship with plaintiff. Plaintiff is not required to plead in detail all of its evidence which would support a finding that the information in question constituted trade secrets within the meaning of the statute.

<u>Ball II</u>, p.13.

In <u>Ball II</u> the court notes that Ohio's trade secrets statute does not require a

specific promise of secrecy, but only that the information in question be "acquired

under circumstances giving rise to a duty to maintain its secrecy or limit its use."

ORC §1333.61(B)(2)(b).  Plaintiff therefore must plead facts sufficient to show that

the information was acquired by reason of a confidential relationship.  This Court

further finds, just as did the Court in <u>Ball II</u>:

> .... The gist of plaintiff's complaint is that the duty to maintain secrecy
> and to limit the use of the information arose by reason of the license
> agreement and the covenant not to compete signed by the defendant.
> In <u>Kewanee Oil Co. v. Bicron Corp.</u>, 416 U.S. 470, 475 (1974), an action
> involving Ohio's trade secret laws, the Supreme Court, stated that the
> protection afforded a trade secret is not lost if the holder of the trade
> secret reveals the trade secret to another in confidence and under an
> implied obligation not to use or disclose it. The Court noted that the
> recipient of confidential knowledge of the subject of a trade secret is
> often the licensee of its holder.  <u>Id.</u>  The licencing agreement and cove-
> nant not to compete referred to in the complaint would create a confi-
> dential relationship warranting the protection of the statute.

<u>Ball II</u>, p. 14.  In <u>Ball II</u>, because the court found, primarily based on lack of the

defendant's signature to the license agreement itself, that the plaintiff's breach of

contract claim therefore was deficient (Ball II, p.9), that court also concluded that

the trade secrets claim was deficient as well.  <u>Id.</u> at 15.  In this case, however, the

Court has already concluded that the breach of contract claim *is* sufficiently pled to

with-stand the Defendant's motion to dismiss.  The court therefore further

concludes that the violation-of-trade-secretes count here is sufficiently pled, as well.

Count Three: Tortious Interference  –

In <u>Ball II</u>, that court also had occasion to examine a claim by PMD of tortious

interference with its business relationships.  As explained by that court:

> The elements of the tort of tortious interference with contract
> are: (1) the existence of a contract; (2) the wrongdoer's knowledge of
> the contract; (3) the wrongdoer's intentional procurement of the con-

tract's breach; (4) lack of justification; and (5) resulting damages. <u>Arter</u>
<u>& Hadden</u>, 85 Ohio St.3d at 176; <u>Kenty v. Transamerica Premium Ins.</u>
<u>Co.</u>, 72 Ohio St.3d 415 (1995).  The tort involves the intentional and
improper interference with the performance of a contract between an-
other and a third person by inducing or otherwise causing the third
person not to perform the contract. <u>Kenty</u>, 72 Ohio St.3d at 418-19.
Only improper interference with a contract is actionable, and thus
interference with another's contract does not constitute a tort if the
interference is justified or privileged. <u>Arter & Hadden</u>, 85 Ohio St.3d
at 176.  In Ohio, one is privileged to purposely cause another not to
perform a contract with a third person where he in good faith is as-
serting a legally protected interest of his own, which he believes will be
impaired or destroyed by the performance of the contract.  <u>Canderm</u>
<u>Pharmacal v. Elder Pharmaceuticals, Inc.</u>, 862 F.2d 597, 601 (6th Cir.
1988); <u>Pearse v. McDonald's System of Ohio, Inc.</u>, 47 Ohio App.2d 20
(1975).

<u>Ball II</u> at 15-16.  The court then identifies and quotes from paragraphs 20 and 21 of

the complaint in that case, which are identical to Complaint ¶¶ 25 and 26 here, and

after consideration and rejection of arguments for dismissal similar to those made

by Defendant here,[8] that court concludes:

> ....  The court cannot say that plaintiff could prove no facts sufficient
> to support its claim seeking to enjoin the alleged actual or threatened
> interference with its contractual relationships by the defendant, and
> defendant's motion to dismiss this claim is not well taken.

The Complaint in this case does contain allegations relative to this count that

were not part of the complaint in <u>Ball II</u>;[9] and that court also did not find sufficient

allegations of the existence of a valid license agreement there, as the Court has

---

8. In response to that defendant's claim that lack of privilege must be alleged, the
court points out that "[w]hether the conduct of the defendant falls within the fair
competition privilege is a defense to be established by the defendant, not an
element of plaintiff's claim." <u>Ball II</u> at 17.

9. For example, the specific allegation in this Complaint's ¶ 12 that Defendant in-
terfered with PMD's license agreement relationship with one Jimmie Clark.  Doc 1-
2, p.4.

found with respect to Count One here. If anything, however, those differing circumstances make it even clearer that Plaintiff has sufficiently pled a tortious interference claim in Count Three of this case.

Count Five: Unjust Enrichment –

Defendant argues that Plaintiff has not stated an unjust enrichment claim "[f]or the same reasons that PMD's breach of contract and trade secret claims are insufficient as a matter of law." Doc 7-1, p. 22. In understood in Ohio:

> The doctrine of unjust enrichment has been described as an equitable theory that "give[s] rise to obligations imposed by law, irrespective of the intentions of the parties" and established "in order to prevent an injustice when one party retains a benefit from another's labors. "*Pawlus v. Bartrug* (1996), 109 Ohio App.3d 796, 800, 673 N.E.2d 188, citing *Sykes Constr. Co., Inc. v. Martell* (Jan. 8, 1992), 9th Dist. Nos. 15034, 15038, at 9-10, cause dismissed (1992), 64 Ohio St.3d 1402. Thus, in order to bring a claim of unjust enrichment, a party must establish that: 1) he conferred a benefit on another party; 2) the other party knew of the benefit; and 3) the other party retained the benefit given under circumstances where it would be un-just for him to retain it without payment. *Hambleton v.. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298; see, also, *Coyne v. Hodge Constr. Inc.*, 9th Dist. No. 03CA0061-M, 2004-Ohio-727,

Champion Contracting Const. Co. Inc. v. Valley City Post No. 5563, 9th Dist. No. 03CA0092-M, 2004-Ohio-3406, 2004 WL 1459298, *5 (Ohio App. 9 Dist.). The Court has already ruled above that Plaintiff's breach of contract and violation of trade secrets claims are sufficiently pleaded to withstand Defendant's motion to dismiss. For similar reasons, the Court finds that the unjust enrichment claim of this count is sufficiently pleaded as well.

Defendant further argues, however, that Plaintiff "cannot state a claim for un just enrichment where there is a contract between the parties that governs the

17

dispute.  Doc.7-1, p. 23.  That is no doubt correct insofar as recovery upon a claim is concerned.  See Id. at *6 (citing inter alia, Hughes v. Oberholtzer, 162 Ohio St. 330, 335 (1954)).  But this case is only at the pleading stage, and Fed.R.Civ.P. 8(e)(2) expressly  provides:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.  A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds....

Under this rule a plaintiff is clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss.  See Kentucky Home Mut. Life Ins Co. v. Duling, 190 F.2d 797 (6th Cir. 1951); Maloney v. Craft-Tech, Inc., 702 F.Supp 2d 623 (E.D. Mich. 1988).

Count Six:[10] Attorney's Fees –

The license agreement in this case contains in ¶ 24 a provision for payment of Plaintiff's attorney's fees in the event of PMD's successful claim for enforcement or breach of the agreement.  Doc.1-2, Exhibit A, p. 8.  Defendant argues that this provision is so onesided as to be unenforceable under Ohio law.  Doc. 7-1, p. 24.  In Davidson v. Weltman, Weinberg & Reis, 285 F.Supp.2d 1093 (S.D. Ohio, 2003), Chief Judge Rice extensively reviewed the development of Ohio law on this point and concluded:

> Stated simply, under the current state of Ohio law, agreements

---

10.  Miss-captioned "Five" in Plaintiff's Complaint.  Doc. 1-2, p. 7.

18

> to pay attorney's fees are not void under any and all circumstances. *See Nottingdale, supra* [33 Ohio St.3d 32]. To the contrary, the Ohio Supreme Court has recognized the right of individuals to agree to pay other's attorney's fees, even in the context of default or breach of contract, although with some limitations. *Id.*

Id. at 1103. This Court agrees and concludes in light of this state of the law that the attorney's fees claim in this count is sufficiently pled to withstand Defendant's motion to dismiss. That is not to say it will necessarily succeed if Plaintiff is successful on any particular of its claims here.

Lastly, for the first time in his reply memorandum (Doc. 20-1) and then again in connection with his recent submission of additional authority (Doc. 28), Defendant has also argued that the principle of collateral estoppel prevents Plaintiff from pursuing its claims in Counts 1-3 and 5 against Defendant Pagnozzi, based on the rulings adverse to Plaintiff on similar claims against other licensee-defendants rendered by another branch of this court in Ball I and Power Marketing Direct, Inc. v. Jimmie Clark, Case No. C2-05-787 (S.D. Ohio, Sep. 6, 2006) (Marbley, J.).

> The Sixth Circuit has adopted a four-part test to determine whether collateral estoppel bars relitigation of an issue: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) judicial determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Smith v. S.E.C.*, 129 F.3d 356, 362 (6th Cir.1997); *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir.1995); *Central Transport, Inc. v. Four Phase Systems, Inc.*, 936 F.2d 256, 259 (6th Cir.1990); Detroit Police Officers Ass'n v. Young, 824 F.2d 512, 515 (6th Cir.1987).

United States v. Estate of Rogers, E.D. Tenn. No. 1:97CV461, 6-28-01 (unpublished)

2001 WL 818160 *17.

The "precise issues" raised and to be resolved at this point in this case are:  1) Whether Plaintiff has adequately pled a cause of action against Defendant Pagnozzi for breach of his license agreement with Plaintiff?  2) Whether Plaintiff has adequately pled a cause of action against Defendant Pagnozzi for violation of Plaintiff's rights under Ohio's Trade Secrets Act?  3) Whether Plaintiff has adequately pled a cause of action against Defendant Pagnozzi for tortious interference with Plaintiff's contractual business rights with others? 4) Whether Plaintiff has adequately pled a cause of action against Defendant Pagnozzi for unjust enrichment at Plaintiff's expense?  and 5) Whether, if any of such issues are ultimately resolved in Plaintiff's favor against Defendant Pagnozzi, Plaintiff is also entitled to recover its attorney fees in this proceeding?

Although similar issues involving Plaintiff and other parties defendant with similar business relationships to this Plaintiff may have been litigated and decided in other proceedings, none this Court is aware of has considered and decided the precise issues before the Court at this point in this case.  Those other cases no doubt warrant careful consideration by this Court in making its rulings here, as the Court has done at several points above.[11]  But as this Court understands the doctrine of

---

11. The Court is also aware that the recent Clark decision, above, reaches conclusions which differ from some of those reached here.  While the Court always gives great deference to decisions by other branches of this court,, in this particular case the Court is constrained to apply Ohio law where the Harris County, Texas court, which first considered issues under the license agreement here, looked to an Ohio forum and Ohio law to resolve those issues between these parties.

collateral estoppel, or issue preclusion, those other rulings, even though made on comparable issues, do not bar Plaintiff from litigating the precise issues involving this Defendant and his alleged actions that are being presented here.

Consistent with the foregoing, Defendant Pagnozzi's Motion To Dismiss Counts One-Three, Five and Six of Plaintiff's Complaint (Doc. 7) is DENIED.

IT IS SO ORDERED.


9-29-2006
Dated

Edmund A. Sargus, Jr.
United States District Judge